IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES BRYSON GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  1:12-CV-1034-MHT |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this action, the *pro se* Plaintiff, James Bryson Graham, alleges that, on or before June 9, 2000, Southtrust Bank, now Wells Fargo Bank, N.A. ("Wells Fargo"), and two of its employees, Defendants Joe Godwin and Keith Petty, defrauded him and wrongfully converted money from one of his accounts at the bank.  Graham further alleges that Defendants Wells Fargo, Malone, Carn, Godwin, and/or Petty engaged in a conspiracy to induce Defendant Judges McLauchlin and/or Quattlebaum to deprive him of due process under color of state law by entering orders in the absence of subject matter jurisdiction. (Doc. 1).  Now pending before the court are the motions to dismiss filed by Defendants Carn (Doc. 13), Wells Fargo (Docs. 18, 39), Malone (Doc. 21), Godwin, Petty, and Wells Fargo (Doc. 25), and Judges McLauchlin and Quattlebaum (Doc. 29).  Having considered the motions and Graham's response, and for good cause, the court concludes that the motions to dismiss are due to be granted and that this case is due to be dismissed.

# I. Standard of Review

## A.     Subject Matter Jurisdiction

Because federal courts are courts of limited jurisdiction, it is a basic premise of federal court practice that the court must have jurisdiction over the subject matter of the action before it can act. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, federal courts only have the power to hear cases as authorized by the Constitution or the laws of the United States. *Kokkonen*, 511 U.S. at 377.

This court operates under an independent obligation to examine its own jurisdiction at each stage of the proceedings, even if no party raises the jurisdictional issues and both parties are prepared to concede it. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). Further, Fed R. Civ. P. 12(h)(3) requires that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

## B.     Motions to Dismiss

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's

inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; see also *Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See *Iqbal*, 556 U.S, at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard).  In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, *the* Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 678.  A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility the defendant acted

3

unlawfully is insufficient to survive a motion to dismiss. *Id*. at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Further, "[c]ourts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 550 U.S. 662. A plaintiff's *pro se* status must be considered alongside the pleading requirements of *Twombly* and *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (applying *Twombly* to a *pro se* complaint). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf*. Fed. Rule Civ. Proc. 8(e) ("All pleadings must be construed so as to do justice"). However, the leniency shown to *pro se* litigants does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR*, 132 F. 3d at 1369 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)); *Pontier v. City of Clearwater*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995)).

## II.  Procedural History

On June 17, 2002, Graham and an individual named Leon M. "Mike" Holland filed a complaint in the Dale County, Alabama, Circuit Court against Wells Fargo's predecessor, Southtrust Bank, and against Keith Petty and Joe Godwin ("the 2002 state court action").

(Doc. 21-1).[1]   Graham and Holland alleged that, through fraudulent suppression and misrepresentation, Southtrust, Petty, and Godwin defrauded them with respect to loans (collectively, "the Playmaker loan") for the purchase and operation of a sporting goods store known as Playmaker, Inc.   (Doc. 21-1).   Graham alleged that, in reliance on the representations of Southtrust, Petty, and Godwin, he agreed to cosign and personally guarantee the Playmaker loan.   (Doc. 21-1).   Graham alleged that Playmaker, Inc., subsequently filed for bankruptcy, and Southtrust, Petty, and Godwin withdrew $401,452.15 from Graham's personal checking account as a set-off against the amount due on the Playmaker loan.   (Doc. 21-1 ¶¶ 24-25).   Graham and Holland sought an award of compensatory and punitive damages.   (Doc. 21-1).   On March 5, 2004, Dale County Circuit Judge Quattlebaum entered an order granting summary judgment for the defendants.   (Doc. 29-1).   In his order, Judge Quattlebaum expressly found that the plaintiffs had produced no evidence of a false statement, misrepresentation, or fraudulently suppressed fact. (Doc. 29-1). Judge Quattlebaum further found that, in any event, the plaintiffs' claims were barred by the statute of limitations.   (Doc. 29-1).   Graham appealed, and the Alabama Supreme Court dismissed his appeal on September 15, 2004 for failure to file a brief in support of his appeal. (Doc. 29-1).

On June 10, 2011, Joe Godwin, Keith Petty, and Wells Fargo Bank filed a complaint

---

[1] The court takes judicial notice of the documents filed in *Graham v. Southtrust Bank, et al.*, Dale County Circuit Court Case No. CV-2002-00204.00.  *See Universal Express, Inc. v. U.S. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006) (stating that a court may take judicial notice of public records (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277–78, 1280 (11th Cir. 1999)).

against Graham and Holland ("the 2011 state court action"). *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (June 20, 2011, Complaint).[2] Godwin, Petty, and Wells Fargo alleged that Graham and Holland had fabricated various documents purportedly constituting a "judgment" against them related to the Playmaker, Inc., loans and investment transaction, and that Graham and Holland had sent them harassing communications and had threatened to file liens against them. *Id.* Pursuant to Ala. Code 1975 § 6-6-500 and Rule 65, ALA. R. CIV. P., Godwin, Petty, and Wells Fargo sought injunctive relief from the alleged harassing communications and threats. *Id.* Godwin, Petty, and Wells Fargo also sought an award of attorneys' fees and costs pursuant to the Alabama Litigation Accountability Act, Ala. Code 1975 §§ 12-19-270 *et seq.*

On August 4, 2011, Dale County Circuit Judge McLauchlin entered the following order:

> This cause coming on to be heard is submitted for a ruling on the Motion for Temporary Restraining Order and Preliminary Injunction filed by the plaintiffs, response thereto filed by the defendants and testimony taken orally before the Court and, the Court having considered the same, the Court finds as follows:
>
> All issues concerning the Playmaker loan, note, and guarantee agreement in question were resolved in [the 2002 state court action] by Summary Judgment granted for the defendants on March 5, 2004, and dismissed on the appeal by the Alabama Supreme Court on September 15, 2004.
>
> After a set-off against the account, the holder of the note claims a balance for accrued interest and other charges as of June 9, 2000. So far as the Court can

---

[2] The court takes judicial notice of the documents filed in *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00. *See Universal Express*, 177 Fed. App'x at 53.

ascertain, there has been no effort to collect the accrued interest and other charges since 2004.

The Court further finds that Joe Godwin, Keith Petty, William C. Carn, and W. Davis Malone have no control over the loan, note, or guarantee agreement. The entity that owns the loan, note and guarantee still claims accrued interest and other charges.

The Court finds that all of the issues concerning this loan have been resolved and cannot be resurrected.

Therefore, it is ORDERED and ADJUDGED as follows:

1. That the defendants James B. Graham and Leon Michael (Mike) Holland shall not harass Keith Petty, Joe Godwin, W. Davis Malone or William C. Carn, with harassing and threatening communications demanding millions of dollars relating to the Wells Fargo loan to Playmaker that were subject to the Graham and Holland 2002 law suit referred to above.

2. That the defendants are hereby enjoined from further communicating with Keith Petty, Joe Godwin, Wells Fargo and their respective current and/or former employees, directors, agents, and representatives including attorneys and insurers, as such communication relates, directly or indirectly to Wells Fargo's collection of sums owed under that loan.

3. That the defendants are enjoined from inquiring or encumbering or causing or attempting to cause injury to or the encumbrance of any of the property of Keith Petty, Joe Godwin, Wells Fargo, or their respective current or former employees, directors, agents and representatives, including attorneys and insurers, as such action relates, directly or indirectly to Wells Fargo's loan to Playmaker or Wells Fargo's collection of sums owed under the loan in question.

4. That the defendants are not to harass, threaten, intimidate, or bother Keith Petty or Joe Godwin.

5. That any or all documents filed in the Probate Office of Dale County by the defendants pertaining to the loan in question . . . [are] hereby expunged from the records and is null and void and held for naught.

6. That the defendants may have non-threatening inquiry with the holder of the note and guaranty Wells Fargo, in order to resolve the issue of accrued interest and other charges which may be owed in an effort to satisfy the note.

*Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (August 4, 2011, Order).

Following an appeal by Graham and Holland, on May 18, 2012, the Alabama Court of Civil Appeals issued a notice of affirmance without an opinion. *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (May 18, 2012, Notice). On June 7, 2012, the Alabama Court of Civil Appeals issued a certificate of judgment affirming the Dale County Circuit Court's judgment in the 2011 state court action. *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (June 7, 2012, Certificate of Judgment).

On November 26, 2012, Graham filed a *pro se* complaint in this court challenging the judgments in the 2002 and 2011 state court actions, arguing that those judgments are void for lack of jurisdiction, and alleging that the judgments were the result of a conspiracy to deprive him of due process.  (Doc. 1).

### III. Discussion

**A.    § 1983 Due Process Claims Against Judges Quattlebaum and McLauchlin**

Construed in the light most favorable to Graham, his complaint contains the following allegations against Judges Quattlebaum and McLauchlin:

-    that Judge Quattlebaum's judgment in the 2002 state court action was allegedly entered without jurisdiction because the original mortgage and promissory note had not been filed in that case;

-   that the evidence was insufficient to support summary judgment for the defendants in the 2002 state court action;

-   that Judge McLauchlin's order in the 2011 state court action granting injunctive relief was allegedly entered without jurisdiction because the original loan documents had not been filed in that case; and

-   that "there appeared to be a scheme calculated to interfere with the court's ability to impartially adjudicate the complaint" (sic).

(Doc. 1).

Graham demands relief in the form of "the return of property seized and foreclosed upon plus an additional amount the court sees as needed to make [Graham] whole." (Doc. 1 p. 6).

42 U.S.C. § 1983 is not a device for obtaining collateral review of state court judgments. *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). Further, assuming that Graham's complaint could conceivably be construed as containing a claim under § 1983 alleging that Judges Quattlebaum and McLauchlin deprived him of property under color of state law and without due process, the state court judges are immune from suit. First, to the extent that Graham seeks to hold Judges Quattlebaum and McLauchlin liable for a money judgment[3] in their official capacities as officials of the State of Alabama, sovereign immunity

---

[3]In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Rooker-Feldman*"), the Supreme Court held that federal district courts have no jurisdiction to sit in review of a state court's judgment. While "the *Rooker-Feldman* doctrine does not apply when a party seeks money damages for the state court's alleged constitutional deprivations," *Rooker-Feldman* does preclude § 1983 claims for *equitable* relief that, in essence, seek to reverse a state court's judgment. *Drees v. Ferguson*, 396 Fed. Appx. 656 (11th Cir. 2010) (citing *Sibley v. Lando*, 437 F.3d 1067, 1070-71 & n.3 (11th Cir. 2005) and *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir. 1988)). Graham does not seek equitable relief against Judge McLauchlin or Judge Quattlebaum. Moreover, even if Graham's demand for the "return of property seized" (Doc. 1 p. 6) could be construed as a request for

9

precludes this court from exercising jurisdiction. Suing Alabama state court judges in their official capacity as agents of the state is simply another way of suing the State of Alabama itself, which is barred by Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits, . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996) ("As for the damages awarded against [the state court judge] in his official capacity [in a case brought pursuant to § 1983], this relief is barred by the sovereign immunity of his then employer, the State of Alabama.").

Second, to the extent that Graham seeks to hold Judges Quattlebaum and McLauchlin liable for damages under § 1983 in their individual capacities, absolute judicial immunity bars Graham's claims. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) ("'[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.'" (quoting *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 734-35(1980)).). Absolute judicial immunity precludes recovery of damages for acts performed by a judge while acting in a judicial capacity unless the judge acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Bolin v. Story*, 225 F.3d 1234, 1239 (2000). Judicial immunity applies even to judicial acts that were erroneous, malicious, or in excess of the judge's jurisdiction. *Bolin*, 225 F.3d at 1239; *see Stump*, 435 U.S. at 357 n.7 (noting the distinction between "excess of jurisdiction" and "the

---

equitable relief, this court could not award equitable relief without essentially reversing the state court judgments in violation of the *Rooker-Feldman* doctrine.

clear absence of jurisdiction").

Graham does not allege that Judges McLauchlin and Quattlebaum were acting in any capacity other than as a state circuit court judges. Moreover, "[t]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 361-362 (1978). Graham alleges that Judges Quattlebaum and McLauchlin entered orders and judgments in cases in which he was a litigant without first requiring loan documents or a promissory note to be filed with the court clerk. Entering orders and judgments in disputes between litigants is inherently a judicial function, and Graham alleges that he was injured in his capacity as a party to the cases in which the judges performed those functions. Therefore, the court concludes that Graham is seeking to recover damages for acts performed in a judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him.").

Graham alleges that Judges McLauchlin and Quattlebaum did not have jurisdiction to rule in the cases before them because, he alleges, the original promissory note and loan document were not first tendered to the court. In support of this argument, Graham cites the irrelevant[4] case of *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943). Graham

---

[4]*Clearfield's* primary significance is its "pathmarking precedent on the authority of federal courts to fashion uniform federal common law on issues of national concern." *Empire Healthchoice Assur., Inc. v. McVeigh* 547 U.S. 677, 690 (2006). In *Clearfield*, the United States Supreme Court held that federal law, rather than local law, governed the rights and duties of the United States with respect to check that it had

suggests that *Clearfield* contains the following quotation:

> [A]n entity cannot compel performance upon its corporate statutes or corporation rules unless it, like any other corporation, is the 'holder-in-due-course' of some contract or commercial agreement between it, and the one on whom its demands for performance are made, and is willing to produce said document, and to place the same into evidence before trying to enforce its demands, called statutes in this case.

(Doc. 45 p. 1)

*Clearfield* contains no such quotation.[5]  318 U.S. 363.  Moreover, the question of whether Alabama Circuit Court Judges McLauchlin and Quattlebaum acted in the "clear absence of all jurisdiction" is not governed by federal case law, but by the state laws that confer jurisdiction on the circuit courts of the State of Alabama.  *See Sibley*, 437 F.3d at 1071 (holding that, in determining whether judicial immunity applied to a Florida state court judge, "the jurisdictional inquiry is a state law question"); *see also Stump*, 435 U.S. at 357 (citing Indiana state law in determining whether an Indiana state court judge acted in the clear absence of all jurisdiction).  The Alabama Supreme Court has stated:

> Jurisdiction is "[a] court's power to decide a case or issue a decree." Black's Law Dictionary 867 (8th ed.2004). Subject-matter jurisdiction concerns a court's power to decide certain types of cases. *Woolf v. McGaugh*, 175 Ala. 299, 303, 57 So. 754, 755 (1911) ("'By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought.'" (quoting *Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 316, 19 L. Ed. 931 (1870))). That

---

issued in the amount of $24.20, and on which the payee's name had been forged.  In establishing the applicable rule of federal law, the Supreme court further held that, just like "any other drawee," the rights and duties of the United States with respect to checks issued by it is governed by "the general rules governing the rights and duties of drawees."  318 U.S. at 369.

[5]The court has attempted unsuccessfully to locate a case containing the purported quote.

12

> power is derived from the Alabama Constitution and the Alabama Code. *See United States v. Cotton*, 535 U.S. 625, 630–31, 122 S. Ct. 1781 (2002) (subject-matter jurisdiction refers to a court's "statutory or constitutional power" to adjudicate a case).

*Ex parte Seymour*, 946 So. 2d 536, 538 (Ala. 2006).

Article VI, § 142, Ala. Const. 1901 provides that "[t]he circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law. . . . It shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers, and shall have such other powers as may be provided by law." Section 12-11-30, Ala. Code 1975 provides that "[t]he circuit court shall have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds ten thousand dollars ($10,000), exclusive of interest and costs. . . . The circuit court shall have other powers as provided by law."

The 2002 state court action was a civil action in which the amount in controversy exceeded $10,000. (Doc. 21-1 ¶¶ 10, 14, 43). Therefore, it was a "type of case" over which Judge Quattlebaum had subject matter jurisdiction. Ala. Code 1975 § 12-11-30; *Seymour*, 946 So. 2d at 538 (holding that subject matter jurisdiction concerns the court's power to decide "certain types of cases" based on "the nature of the cause of action and of the relief sought").

Graham appears to argue that, without original copies of the loan documents, the *defendants* in the 2002 state court action had no "standing" and, therefore, subject matter

13

jurisdiction was lacking.  (Doc. 45 p. 2).[6]  Under Alabama law, "'[w]hen a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.'" *Riley v. Pate*, 3 So.3d 835, 838 (Ala. 2008) (quoting *State v. Property at 2018 Rainbow Drive*, 740 So.2d 1025, 1028 (Ala. 1999)).   Graham was the party who "commenced" the 2002 state court action litigation with a complaint alleging fraudulent misrepresentation and suppression.   Therefore, it is Graham's standing, not that of the defendants to the 2002 action, which is relevant to determining whether the trial court had jurisdiction to hear the case and enter summary judgment on Graham's claims.   Graham alleged in the 2002 action that he suffered an actual, particularized injury as a result of the allegedly fraudulent acts of which he complained.  *See Riley*, 3 So. 3d at 838 (holding that, to have standing, a party must have suffered an actual, particularized injury to a legally protected right). Therefore, Graham had standing to bring the 2002 state court action, and Judge Quattlebaum had jurisdiction to enter summary judgment on his claims – regardless of whether the defendants filed original loan documents or tendered an original promissory

---

[6]In support of his standing argument, Graham offers a block quote that he attributes to the American Bar Association, but that this court's research indicates is probably from a group of foreclosure cases in the United States District Court for the Northern District of Ohio.  (Doc. 45 p. 2).  *See In re Foreclosure Cases*, 521 F. Supp. 2d 650, 655 (N.D. Ohio 2007).  There, the federal district court noted its responsibility to consider the existence of subject matter jurisdiction in the cases pending before it.  The district court also questioned whether the amount-in-controversy requirement for federal diversity jurisdiction had been met, and whether the plaintiffs had standing at the time the action had been filed.  The quotation used by Graham does not address the existence of subject matter jurisdiction in the circuit courts of Alabama.  However, the court notes that, not unlike the federal district court in Ohio, Alabama courts have also addressed the question of standing as one that implicates subject matter jurisdiction.  *See Riley v. Pate*, 3 So. 3d 835, 838 (Ala. 2008) (holding that a trial court has no subject matter jurisdiction over an action commenced by a party without standing).

note to the court clerk.  *See id.*; Ala. Code 1975 § 12-11-30 (establishing the jurisdiction of circuit courts over civil actions).

In the 2011 state court action, the plaintiffs sought injunctive relief from alleged harassment and collection threats from Graham.  Alabama law provides that "[i]njunctions may be granted . . . by the judges of the . . . circuit courts." Ala. Code 1975 § 6-6-500.  *See also* Ala. R. Civ. P. 65& 65(dc) (establishing rules of procedure for issuance of injunctions by circuit courts).  Accordingly, Judge McLauchlin had jurisdiction to rule on the complaint for injunctive relief.  *Id.*; *see also Seymour*, 946 So. 2d at  53 ("Subject-matter jurisdiction concerns a court's power to decide certain types of cases.").  Judge McLauchlin did not rule on the request by the plaintiffs in the 2011 state court action for an award of attorneys' fees and costs pursuant to the Alabama Litigation Accountability Act, *see* Ala. Code 1975 §§ 12-19-270 *et seq*.  Accordingly, for purposes of the judicial immunity analysis, it is not necessary for this court to consider whether Judge McLauchlin had jurisdiction to rule on the request for attorneys' fees.

The court finds no merit in Graham's argument that the plaintiffs in the 2011 state court action lacked "standing" because they did not submit the original loan documents or promissory note to Judge McLauchlin.  Under Alabama law, to have standing to seek an injunction, a party must demonstrate that he or she will "suffer immediate harm if the requested relief is not granted." *Ex parte Ala. Dept. of Mental Health & Retardation*, 837 So. 2d 808, 811 (Ala. 2002).  The plaintiffs in the 2011 action alleged, and Judge

15

McLaughlin agreed, that Graham was pursuing them with forged "judgments" and was threatening without legal justification to undertake "a variety of collection efforts," including filing liens against their property, if they did not pay him $1,605,808. *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (June 20, 2011, Complaint & August 4, 2011, Order). Thus, the plaintiffs in the 2011 state court action had standing to seek injunctive relief because they demonstrated that they would suffer immediate and irreparable harm if the court did not enjoin Graham from carrying out his threats. *See Ex parte Ala. Dept. of Mental Health*, 837 So. 2d at 811.

Accordingly, judicial immunity precludes Graham's claims against Judges Quattlebaum and McLauchlin in their individual capacities because his complaint seeks relief for acts performed in their judicial capacity and within their jurisdiction as judges of the Dale County Circuit Court. *Stump*, 435 U.S. at 356-57 ("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly" (citation and internal quotation marks omitted)).

**B.   Claims Against Wells Fargo, Malone, Carn, Godwin, and Petty**

**1.   Graham's Allegation of A Scheme to Deprive Him of Due Process Fails to State a Claim Upon Which Relief Can be Granted.**

In his complaint, Graham alleges that "there appear[ed] to be a scheme to interfere with the court's ability to impartially adjudicate the complaint." (Doc. 1 p. 3). Graham's *pro se* complaint is subject to the requirements of *Iqbal* and *Twombly*, *supra*. *See Hopkins v.*

*Saint Lucie County School Bd.*, 399 Fed. Appx. 563, 565 (11th Cir. 2010) (unpublished) (citations omitted) ("While the pleadings of pro se litigants are "liberally construed," they must still comply with procedural rules governing the proper form of pleadings."); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (considering the requirements of *Twombly* alongside the plaintiff's *pro se* status).  However, in determining whether Graham's allegation of a conspiracy to influence the judicial process presents a claim upon which relief can be granted, the court affords appropriate deference to Graham's pleading in light of his *pro se* status.  *See Erickson*, 551 U.S. at 93-94.  Therefore, keeping Graham's limited experience and lack of legal training in drafting formal pleadings in mind, the court has considered whether the facts alleged in his complaint are sufficient to state a claim against Defendants Wells Fargo, Malone, Carn, Godwin, and/or Petty for conspiracy to deprive Graham of his constitutional rights under color of state law in violation of 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983 (establishing liability for the deprivation of constitutional rights under the color of state law); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (holding that an otherwise private person acts "under color of" state law, and may be subject to liability under §1983, when engaged in a conspiracy with state officials to deprive another of federal rights); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (Citations omitted.)).

Based strictly on Graham's allegation that "there appear[ed] to be a scheme to

interfere with the court's [sic] ability to impartially adjudicate the complaint," (Doc. 1 p. 3), it is unclear which of the two state court actions Graham contends "appeared" to involve a "scheme" to improperly influence a judge.  Moreover, standing alone, the allegation that there "appear[ed] to be" a scheme or conspiracy is, at most, a speculative legal conclusion without factual support; as such, is not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555) ("[T]he [*Twombly*] plaintiffs' assertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of truth.").  Taken as a whole, however, Graham's complaint does contain allegations that Defendants Wells Fargo, Malone, Carn, Godwin, and/or Petty attempted to influence Judge Quattlebaum and/or Judge McLauchlin to enter orders that deprived him of his property in the absence of subject matter jurisdiction.  (Doc. 1; *see also* Doc. 45 p. 2 (Graham's argument that "[t]he right to take property without authority is the central question for this court to rule on").

To prevail on a conspiracy claim under § 1983, a plaintiff must prove not only that a conspiracy existed for the purpose of depriving the plaintiff of his constitutional rights, but also that the conspiracy actually resulted in an "actionable wrong" that deprived the plaintiff of a constitutional right.  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1259-60 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. . . .  The conspiratorial acts must impinge upon the federal right; the

plaintiff must prove an actionable wrong to support the conspiracy." (citations and internal quotation marks omitted)).  Graham alleges that a conspiracy between private parties and the state court judges culminated in an actionable wrong when Judges Quattlebaum and/or McLauchlin entered judgments in the absence of subject matter jurisdiction, thus allegedly "tak[ing] property without authority" under the color of state law.  (Doc. 45 p. 2).  However, as explained in Part III.A. of this opinion, in both state court cases, the respective judges *did* have subject matter jurisdiction.  Thus, there can be no merit to Graham's contention that the private parties engaged in a conspiracy to prompt Judges Quattlebaum and/or McLauchlin to commit an "actionable wrong" that deprived him of due process by entering judgments unsupported by subject matter jurisdiction. (Doc. 45 p. 2).  *See Grider*, 618 F.3d at 1259-60 (holding that, to prevail on a conspiracy claim under § 1983, the plaintiff must show that the conspiracy resulted in an "actionable wrong" that "that resulted in the actual denial of some underlying constitutional right").

Therefore, Graham's complaint fails to state a complaint upon which relief can be granted with respect to his allegation that Defendants Wells Fargo, Malone, Carn, Godwin, and/or Petty engaged in a conspiracy to induce Judge McLauchlin and/or Quattlebaum to deprive him of due process under color of state law by entering orders in the absence of subject matter jurisdiction.

## C.   The Court Lacks Jurisdiction Over Graham's State Law Claims Against Wells Fargo, Petty, and Godwin

Graham alleges that, "at the time of entering the promissory note" and guarantee

19

agreement for the Playmaker loan, "the Defendants" fraudulently suppressed the fact that they "knew" Playmaker, Inc., would fail and that Graham would lose his investment.  (Doc. 1 p. 2).   The only "Defendants" who could conceivably have had any duty to disclose material facts about the Playmaker loan "at the time of entering the promissory note" were Wells Fargo and the two named Defendants who were agents or employees of what was then Southtrust Bank: Godwin and Petty.[7]  Graham also alleges that Defendants Godwin and Wells Fargo "converted" $401,452.15 from his personal bank account as a "setoff" when Playmaker, Inc. defaulted on the loan.  (Doc. 1 pp. 1-2).

Setting aside the obvious temporal discrepancies posed by Graham's argument regarding Wells Fargo's right to execute a setoff without first filing original loan documents in a lawsuit that had not yet been instituted by Graham, the court must first determine whether it has jurisdiction over Graham's state law claims.  In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Rooker-Feldman*"), the Supreme Court held that it alone sits as the only federal court with jurisdiction to review a state court's judgment.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  Thus, after state court proceedings have ended, a federal district court has no jurisdiction over a federal case brought by the loser of the state

---

[7] Although the complaint does not specifically reference Defendant Keith Petty by name with respect to any of Graham's claims and allegations, the court concludes that Graham has also attempted to state his fraud claim against Petty, who was an officer of Wells Fargo's predecessor bank at the time of the loan transaction and a defendant in the 2002 state court action. (Doc. 21-1); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (holding that *pro se* pleadings are to be liberally construed).

court action who complains of an injury caused by the state-court judgment and who seeks review and rejection of that judgment. *Id*.; *see also Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) ("[F]ederal district courts cannot review state court final judgments.").

In the 2002 state court action, Graham alleged that Godwin, Petty, and Wells Fargo's predecessor, Southtrust Bank, fraudulently induced him to enter into the Playmaker loan and guarantee agreement by misrepresenting and suppressing material facts, including the extent of Graham's potential personal liability and their alleged foreknowledge that Playmaker, Inc. would not be a viable investment and that it was likely to default on the loan. (Doc. 21-3). Graham alleged that, as a result of the alleged fraud, he suffered financial loss, including the $404,452.15 withdrawn from his personal checking account as a setoff against the Playmaker loan. (Doc. 21-1 ¶¶ 25, 42). On March 5, 2004, Judge Quattlebaum entered an order finding (1) that Wells Fargo, Godwin, and Petty did not fraudulent misrepresent or suppress material facts; (2) that Graham could not have reasonably relied on any alleged misrepresentation; (3) that Wells Fargo, Godwin, and Petty had no duty to disclose the allegedly suppressed facts; and (4) that, in any event, Graham's complaint was barred by the statute of limitations. (Doc. 29-1).

Graham's state law claim in this court for fraud against Wells Fargo, Godwin, and Petty, is identical to the one he brought against them in the 2002 state court action, and he seeks review and rejection of the judgment on his fraud claim in the 2002 case. (Doc. 1). Therefore, Graham's fraud claim falls within the boundaries of the *Rooker-Feldman* doctrine,

21

and this court is without subject matter jurisdiction to consider the claim.  *See Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir.  2009) (defining "the boundaries of the *Rooker-Feldman* doctrine" to include "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" (quoting *Exxon*, 544 U.S. at 284)); *see also Casale*, 558 F.3d at 1260 (holding that *Rooker-Feldman* "doctrine applies . . . to federal claims [that were] raised in the state court" and that were subject to a final judgment in the state court).  Graham forfeited his opportunity to obtain review and rejection of the summary judgment entered by Judge Quattlebaum when the Alabama Supreme Court dismissed his appeal from that judgment for failure to file a brief in support of the appeal.  (Doc. 29-1).  He cannot obtain review of that judgment in this court.  *Casale*, 558 F.3d at 1260 ("The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.").

Likewise, *Rooker-Feldman* precludes review of Graham's allegation that Wells Fargo, Godwin, and Petty wrongfully "converted" $404,452.15 from his checking account.  Although Graham did not allege a separate claim for conversion in the 2002 state court action, he did allege that, in furtherance of the alleged fraud, Petty, Godwin, and Wells Fargo's predecessor Southtrust Bank wrongfully withdrew $404,452.15 from his checking account as a setoff against the Playmaker loan.  (Doc. 21-1 ¶¶ 25, 42).  In this case, Graham

alleges that "there was no basis for the . . . setoff" because the setoff was the product of a fraud and because Wells Fargo did not file "the original mortgages and promissory note" in the 2002 state court action before Judge Quattlebaum.  (Doc. 1. pp. 1-2).  Graham's claim for "conversion" is so inextricably intertwined with Judge Quattlebaum's judgment that resolving the "conversion" claim in Graham's favor would effectively nullify the state court judgment on Graham's fraud claim.  Furthermore, the claim could only succeed to the extent that Judge Quattlebam wrongly decided the issues in the 2002 state court action.  Therefore, this court does not have jurisdiction to review Graham's claim that Wells Fargo, Godwin, and Petty wrongfully "converted" $404,452.15 from his checking account. *See Casale*, 558 F.3d at 1260 (holding that *Rooker-Feldman* precludes lower federal court jurisdiction over claims that are so inextricably intertwined with the state court judgment that resolving the claim in the plaintiff's favor "would 'effectively nullify' the state court judgment, or [the claims would] succeed[] only to the extent that the state court wrongly decided the issues" (citations and internal quotation marks omitted)).

Because the court concludes that it has no jurisdiction over Graham's state law claims, the court pretermits discussion of the Defendants' arguments that those claims are barred by *res judicata*, collateral estoppel, and the applicable statutes of limitations.

## Conclusion

Accordingly, it is the Recommendation of the Magistrate Judge

1.     that the motion to dismiss filed by Defendant Carn (Doc. 13) be **granted**;

23

2.      that the motions to dismiss filed by Defendant Wells Fargo (Docs. 18, 39) be **granted**;

3.      that the motion to dismiss filed by Defendant Malone (Doc. 21) be **granted**;

4.      that the motion to dismiss filed jointly by Defendants Godwin, Petty, and Wells Fargo (Doc. 25) be **granted**;

5.      that the motion to dismiss filed by Defendant Judges McLauchlin and Quattlebaum (Doc. 29) be **granted**;

6.      that all claims against Judges McLauchlin and Quattlebaum in their official capacities be **dismissed** without prejudice on grounds of sovereign immunity and lack of subject matter jurisdiction;

7.      that all claims against Judges McLauchlin and Quattlebaum in their individual capacities be **dismissed** with prejudice on grounds of judicial immunity;

8.      that all claims against Defendants Wells Fargo, Malone, Carn, Godwin, and Petty for conspiracy to deprive Graham of due process in violation of 42 U.S.C. § 1983 be **dismissed** with prejudice for failure to state a claim upon which relief can be granted; and

9.      that all state law claims against  Defendants Wells Fargo, Godwin, and Petty be **dismissed** without prejudice for lack of subject matter jurisdiction.

Further, there being no other claims pending in this case, it is the Recommendation of the Magistrate Judge that this case be **dismissed**.

**ORDERED** that the parties shall file any objections to this Recommendation on or

before **June 4, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*; see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 21st day of May, 2013.


        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE