IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES BRYSON GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 1:12-CV-1034-MHT |
| ) | (WO) |
| WELLS FARGO BANK, N.A., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the motion for sanctions filed by Defendants Wells Fargo, Godwin, and Petty. (Doc. 25). For the reasons stated in this order, and for good cause, the court concludes that the motion for sanctions is due to be denied.

Defendants Wells Fargo, Godwin, and Petty argue that Graham should be subject to sanctions because he has allegedly engaged in the following conduct vexatiously and in bad faith: (1) he has filed a complaint in this court seeking to relitigate matters that have already been decided by the state courts; and (2) prior to the filing of this lawsuit, he engaged in allegedly harassing activities by sending forged "judgments" and baseless invoices marked "Passed [sic] due!" (Doc. 25-5), recording baseless liens in the Dale County Probate Court (Doc. 25-6), and sending an allegedly baseless written complaint to the Alabama State Bar against Defendant Malone and Attorney Keith Andress,[1] both of whom have served as

---

[1] Andress is counsel of record for Wells Fargo, Godwin, and Petty in the case before this court. *See* Docket Sheet. The Alabama State Bar received Graham's complaint against Andress and Malone on July 12, 2012. (Doc. 25-7 p. 9). This lawsuit was filed November 26, 2012. (Doc. 1)

counsel for Wells Fargo, Godwin, and Petty. (Doc. 25-7; Doc. 25 p. 14).

As legal authority for the imposition of sanctions, Defendants Wells Fargo, Godwin, and Petty cite Rule 11, Fed. R. Civ. P., and this court's inherent power to impose sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. (Doc. 25 p. 12).

The motion for sanctions was filed as part of a "Motion to Dismiss *And* Motion for Sanctions." (Doc. 1 p. 1 (emphasis added)). It was not made separately from any other motion and it was served on the same day it was filed, in violation of the requirements of Fed. R. Civ. P. 11(c)(2). (Doc. 25). Because the movants have not complied with the procedural requirements of Rule 11, the court will not consider imposing Rule 11 sanctions against Graham. Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . . The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."); *see Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006) (unpublished opinion) ("[The defendant's] failure to give [the plaintiff] the twenty-one day safe harbor period forecloses Rule 11 sanctions for the initial filing of a frivolous suit.").

This court's inherent power to impose sanctions for actions taken in "bad faith, vexatiously, wantonly, or for oppressive reasons" must be exercised with great caution, restraint and discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). "'[B]ad faith

is the key to unlocking the court's inherent power," and a court exercising its inherent power to issue sanctions must "'make specific findings as to the party's conduct that warrants sanctions.'" *In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001)).  Bad faith exists where a party or attorney "knowingly or recklessly raises a frivolous argument." *In re Porto*, 645 F.3d at 1303 (citations and internal quotation marks omitted).  Generally, a *pro se* plaintiff cannot reasonably be expected to possess an attorney's ability to discern whether a legal theory or claim is "frivolous." *Cf. United States v. Morse*, 532 F.3d 1130, 1133 (noting that sanctions pursuant to Rule 38, Fed. R. App. P., are generally not warranted against *pro se* plaintiffs who are not attorneys and who have not previously been warned that their claims were meritless).

In determining whether Graham "knowingly or recklessly" interposed a frivolous argument in this court, the court notes that there is a difference between a party who is simply dead wrong about the law, and one who persists in spinning bogus legal theories even after this court has ruled that those theories are untenable. This critical distinction is illustrated in the two noticeably distinguishable cases cited by Wells Fargo, Godwin, and Petty.  (Doc. 25 pp. 11-12). In *Watts v. Taylor, Bean & Whittaker Mortgage Corp*, 2011 WL 2610492 (M.D. Ga. July 1, 2011), sanctions were imposed against a *pro se* plaintiff "based on his bad faith conduct in continuing to file baseless, frivolous complaints on the matter at hand *despite the [c]ourt's prior warnings*." *Id*. at *1 (emphasis added).  The plaintiff was "no stranger to [the] [c]ourt, having filed three cases in the past two years," and the court had "warned" the

3

plaintiff "very clearly" that any future suits would result in sanctions if filed in bad faith. *Id*. Nevertheless, "just five months" after the court's warning, the plaintiff filed another complaint. *Id*. at *2. Similarly, in *Vaughan v. Bank of America*, 2011 WL 1298216 (S.D. Ala. March 17, 2011) (Recommendation of the Mag. Judge, adopted April 5, 2011), the district court dismissed a *pro se* plaintiff's complaint without prejudice pursuant to Fed. R. Civ. P. Rule 41(b) because, "[n]otwithstanding the court's clear directive, plaintiff . . . failed to obey two court orders and submit a proper complaint."

Graham has not filed multiple lawsuits in this court, and this court has not yet had occasion to warn him against persisting in making frivolous legal arguments. To date, Graham has not defied this court's orders, engaged in contemptuous behavior, or presented legal arguments in a vexatious or harassing manner; he has not used frivolous legal arguments to delay disposition of the case; and he has not perpetrated a fraud on this court. *See Chambers*, 510 U.S. at 43 (noting that the court's inherent powers to sanction vexatious or contemptuous conduct originates in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," and to "impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"). There is no evidence of record that Graham has sent harassing communications to any of the Defendants in conjunction with his prosecution of this lawsuit. *Cf. Maus v. Ennis*, 2013 WL 1150140 (11th Cir. March 20, 2013) (slip copy, unpublished table opinion) (affirming sanctions issued against a *pro se* plaintiff under Rules 16(f) & 37, Fed. R. Civ. P.,

4

for bad faith conduct, including "persistently act[ing] with rudeness and disrespect" toward other litigants, even after admonishment from the court).

All Graham has done in this court is to file, for the first time in federal court, a *pro se* complaint claiming that he was denied due process in state court.[2] *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (holding that liability may exist under § 1983 for "[p]rivate parties who corruptly conspire" with a state court judge). Although Graham's claim is grounded primarily in an untenable legal theory about the nature of standing and subject matter jurisdiction, this court will not invoke its inherent powers to sanction a party, especially a *pro se* litigant, merely for being wrong about the law. Otherwise, sanctions would be warranted against *some* party in virtually every case before the court, a result not in keeping with the Supreme Court's directive to exercise inherent power with restraint and caution. *See In re Porto*, 645 F.3d at 1305 (holding that "equat[ing] lack of merit with bad faith" is "a fallacy that would lead to the conclusion that every losing party had litigated in bad faith"); *see also In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) ("The Supreme Court has warned that a court must 'exercise caution in invoking its inherent power,' stating: 'Because of their very potency, inherent powers must be exercised with restraint and discretion.'" (quoting *Chambers*, 501 U.S. 32, 44-45)).

Wells Fargo, Godwin, and Petty have submitted uncontroverted evidence that, *prior to filing this lawsuit*, Graham did engage in frivolous, vexatious, harassing activities when

---

[2]Graham has also responded to this court's orders to show cause why the motions to dismiss should not be granted (Docs. 42, 45, 50).

5

he sent forged "judgments"[3] and baseless invoices marked "Passed [sic] due!" (Doc. 25-5), and recorded baseless liens in the Dale County Probate Court (Doc. 25-6). These vexatious, harassing acts formed the basis of the 2011 state court action filed by Godwin, Petty, and Wells Fargo. (Doc. 25-5; Doc. 25-6); *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (June 20, 2011, Complaint). Wells Fargo, Godwin, and Petty have already obtained relief with respect to these particular acts of harassment, although the state court did not grant their request for sanctions. *Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (August 4, 2011, Order). There is no evidence that Graham continued sending forged judgments and invoices or filing baseless liens after the state court entered its August 4, 2011, Order, or at any time in connection with the prosecution of the case before this court.

In appropriate circumstances, this court's inherent power can reach "conduct . . . beyond the court's confines" that defies the court's orders, threatens the disruption of court proceedings, or tampers with the administration of justice. However, under the facts of this case, Graham's actions with respect to baseless "judgments," invoices, and liens cannot fairly be construed as affront to *this* court's orders, integrity, or judicial process. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("The court's inherent power derives from the court's need 'to manage *[its] own affairs* so as to achieve the orderly and expeditious disposition of cases." (quoting *Chambers*, 501 U.S. at

---

[3] The forged "judgments" do not purport to issue from this court or, for that matter, any court. (Doc. 25-5).

43) (emphasis added)).  Further, in light of the prospective nature of the injunctive relief provided in the state court's August 4, 2011, Order, and that court's inherent jurisdiction to enforce that order, this court concludes that, at this time, its inherent powers are neither appropriate nor necessary to address Graham's past use of forged "judgments," baseless invoices, and baseless liens – or to prevent Graham from harassing Petty, Graham, or Wells Fargo through such conduct in the future.  *See Godwin v. Graham*, Dale County Circuit Court Case No. CV-2011-900069.00 (August 4, 2011, Order) ("[Graham is] hereby enjoined from further communicating with Keith Petty, Joe Godwin, Wells Fargo and their respective current and/or former . . . representatives including attorneys . . . as such communication relates, directly or indirectly to Wells Fargo's collection of sums owed under that loan. . . . [Graham is] not to harass, threaten, intimidate, or bother Keith Petty or Joe Godwin. . . . [Graham] may have non-threatening inquiry with . . . Wells Fargo, in order to resolve the issue of accrued interest and other charges which may be owed in an effort to satisfy the note."); *see also Alderwoods Group, Inc., v. Garcia*, 682 F.3d 958, 969-71 (11th Cir. 2012) ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order . . . . Other courts are without jurisdiction to do so.").

Moreover, under the circumstances of this case, Graham's complaint before the Alabama State Bar does not necessarily implicate the concerns at the heart of this federal court's inherent powers: the "control necessary" to enforce this court's own orders, ensure

<sup>Case 1:12-cv-01034-MHT-CSC Document 53 Filed 05/21/13 Page 8 of 9</sup>

the orderly disposition of the cases before it, and protect the decorum, efficiency, and fundamental integrity of this court as an institution of justice. *See Chambers*, 501 U.S. at 43-44 (discussing the nature of the inherent power to impose sanctions). The court will not interfere with the Alabama State Bar's authority to consider Graham's complaint on its merits and dispose of it accordingly.[4]

Therefore, the court will not sanction Graham for filing a single complaint in federal court seeking to overturn state court judgments.

Accordingly, it is the **RECOMMENDATION** of the magistrate judge that the motion for sanctions (Doc. 25) be **denied**. Further, it is

**ORDERED** that the parties shall file any objections to this Recommendation on or before **June 4, 2013**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)*; see Stein v.*

---

[4]On August 7, 2012, the Alabama State Bar notified Graham that, based on the responses of Andress and Malone, the bar would not take action on the complaint.

*Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 21st day of May, 2013.

                                              /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE